**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL 178 HEALTH & WELFARE TRUST FUND, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>FOUGERA PHARMACEUTICALS, INC.; SANDOZ, INC., NOVARTIS INTERNATIONAL AG, AKORN, INC.; HI-TECH PHARMACAL CO., INC.; PERRIGO COMPANY PLC; TARO PHARMACEUTICAL INDUSTRIES, LTD.; TARO PHARMACEUTICALS USA, INC.; WOCKHARDT LTD.; MORTON GROVE PHARMACEUTICALS, INC.; and ACTAVIS HOLDCO U.S., INC.,<br><br>     Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund ("Local 178" or "Plaintiff"), by and through the undersigned counsel, allege the following based upon information and belief (except for those allegations relating to Plaintiff):

## INTRODUCTION

1. Plaintiff brings this action both individually and on behalf of persons and entities in the United States and its territories who purchased, paid and/or provided reimbursement for some or all of the purchase price of: (1) generic clobetasol products manufactured by Defendants during the period from June 3, 2014 to the present; and/or (2) generic desonide products manufactured by Defendants during the period June 4, 2013 to the present.

1

2.      Clobetasol propionate ("clobetasol") and desonide are topical corticosteroids used to treat various skin disorders. Plaintiff alleges that Defendants Taro, Fougera, Hi-Tech, Perrigo, Wockhardt, and Actavis (as defined below), the manufacturers of generic clobetasol and/or desonide,  have conspired, combined and contracted to fix, raise, maintain and stabilize prices at which generic clobetasol and desonide would be sold.

3.      The claims in this case arise from a broad conspiracy among manufacturers of generic drugs to fix the prices charged for those drugs in recent years. The conspiracy appears to have been effectuated by direct company-to-company contacts among generic drug manufacturers, as well as joint activities undertaken through trade associations such as the Generic Pharmaceutical Association ("GPhA"). The unlawful acts undertaken with respect to generic clobetasol and desonide arise from that overall conspiracy.

4.      Drug manufacturers' dramatic and unexplained price hikes for generic drugs have engendered extensive scrutiny by the press, the United States Congress, and federal and state antitrust regulators in the last couple of years.  In 2014, the Antitrust Division of the United States Department of Justice ("DOJ") commenced a wide-ranging criminal investigation of this broad conspiracy and has caused grand jury subpoenas to be issued to various Defendants in connection with this investigation.[1]

5.      At least two of the Defendants—Taro and Actavis—have been subpoenaed by the DOJ as part of its ongoing investigation of anticompetitive practices in the generic pharmaceutical industry.

---

[1] The investigation encompasses a number of generic drugs and, as the scope of the DOJ's investigation is further clarified, Plaintiff reserves the right to amend its complaint to add more parties and/or claims.

6.      The DOJ's subpoenas followed reports that highlighted concerns about the rising prices of generic drugs generally, and clobetasol and desonide more specifically.  For example, in November 2015, the *Boston Globe* reported that the price of one form of clobetasol spiked 1,496% from $0.26 per gram in 2013 to $4.15 per gram in 2015.



7.      In August 2016, both clobetasol and desonide were listed in a General Accounting Office ("GAO") report as a generic drug that had experienced "extraordinary price increases."

8.      These extraordinary price increases were not the result of supply shortages, demand spikes, or other market conditions.  Rather, they were a result of Defendants' coordinated and collusive efforts, which violate the Sherman Act (15 U.S.C. § 1, *et seq*.), as well as state antitrust, consumer protection, and common laws.

9.      Because of Defendants' unlawful conduct, Plaintiff and the other members of the proposed Classes paid artificially inflated prices that exceeded the amount they would have paid if a competitive market had determined prices for generic clobetasol and desonide.

## JURISDICTION AND VENUE

10.      Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26), for injunctive relief and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. § 1, 3).

11.      This action is also instituted under the antitrust, consumer protection, and common laws of various states for damages and equitable relief, as described in Counts Two through Four below.

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Section 16 of the Clayton Act (15 U.S.C. §26). In addition, jurisdiction is also conferred upon this Court by 28 U.S.C. §§ 1367.

13.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C § 1391(b), (c) and (d) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.[2]

14.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) sold generic clobetasol and/or desonide products throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## PLAINTIFF

15.     Plaintiff Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund ("Local 178" or "Plaintiff"), located in Springfield, Missouri, is a local union that provides health care and other benefits to its members who reside in Missouri as well as other locations throughout the United States,  through its not-for-profit trust fund. Local 178 indirectly purchased generic clobetasol and/or desonide during the Class Period as defined below, and was injured in its business or property by reason of the violations of law alleged herein. For prescriptions of

---

[2]  As used herein, the term "Class Period" means June 3, 2014 to the present for purposes of generic clobetasol products and June 4, 2013 to the present for purposes of generic desonide products.

generic drugs, such as generic clobetasol and desonide products manufactured by one or more Defendants, the employee plan participant typically pays a portion of the cost of the prescription. Participating pharmacies collect the co-payment from the employee plan participant and bill Local 178 for the remaining cost of the generic clobetasol and/or desonide purchases.

**DEFENDANTS**

16.     Defendant Fougera Pharmaceuticals Inc. ("Fougera") is a New York corporation with its principal place of business in Melville, New York. Fougera is a specialty dermatology generics company that markets and sells generic clobetasol and generic desonide throughout the United States.  Fougera is a wholly owned subsidiary of Sandoz, Inc. During the Class Period, Fougera sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

17.     Defendant Sandoz, Inc. ("Sandoz"), a Colorado corporation with a principal place of business in Princeton, New Jersey. Sandoz is a global leader in generic pharmaceuticals and biosimilars and a division of the Novartis Group.  Sandoz acquired Fougera in July 2012 for $1.5 billion in cash, making Sandoz the top generic dermatology medicines company globally and in the U.S. During the Class Period, Sandoz sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

18.     Defendant Novartis International AG ("Novartis"), is a Swiss multinational pharmaceutical company based in Basel, Switzerland.  In tandem, Sandoz International and Sandoz operate as the generic pharmaceuticals division of Novartis.  Novartis manufactures its dermatology products at locations in Hicksville and Melville, New York. Through its subsidiaries Fougera and Sandoz, during the Class Period, Sandoz sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

5

19.     In this complaint, Fougera, Sandoz, and Novartis will be referred to collectively as "Fougera."

20.     Defendant Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") is a Delaware Corporation with its principle place of business in Amityville, New York. Hi-Tech markets and sells generic clobetasol throughout the United States. Hi-Tech acquired five ANDA's for clobetasol propionate .05% (ointment, solution, cream, emoltion cream and gel) from DFB Pharmaceuticals Inc. in or around 2009. In April of 2014, Akorn, Inc. acquired Hi-Tech for $640 million.  During the Class Period, Hi-Tech sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

21.     Defendant Akorn, Inc. ("Akorn") is a Louisiana Corporation having its principal place of business in Chicago, Illinois. Akorn acquired Hi-Tech in 2014, in part to broaden its products line into topical creams and ointments.  As a result of its acquisition of Hi-Tech, Akorn sold generic clobetasol and/or desonide products throughout the United States. At the time of the acquisition, Akorn issued a press release in which Raj Rai, Chief Executive Officer of Akorn stated: "We are excited to announce that we have completed the acquisition of Hi-Tech, our largest acquisition to date. . . . This transformative acquisition diversifies our revenue base and strengthens our capabilities in both manufacturing and R&D. . . . We welcome our new colleagues from the Hi-Tech team and look forward to collaborating with them on the future direction of our company."

22.     In this complaint, Hi-Tech and Akorn will be referred to collectively as "Hi-Tech."

23.     Defendant Perrigo Company plc ("Perrigo") is incorporated under the laws of Ireland with its principal place of business in Dublin, Ireland. Perrigo's North American base of

6

operations is located at 515 Eastern Avenue, Allergan, Michigan 49010, where Perrigo's domestic subsidiaries (Perrigo Company, a holding company; Perrigo Pharmaceuticals Co. and L. Perrigo Co., pharmaceuticals manufacturers; and Perrigo Sales Corp., a sales company), all Michigan corporations, are also located.  Perrigo's prescription drug business focuses primarily on the manufacture and sale of extended topical prescription pharmaceuticals, such as clobetasol and desonide. Perrigo New York, Inc., a Delaware corporation, manufacturers Perrigo's cream and ointment tubes, producing more than 50 million tubes annually. The officers and directors of Perrigo and these domestic Perrigo subsidiaries have been identical or substantially overlapping throughout the Class Period. During the Class Period, Perrigo, through its domestic subsidiaries, sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

24.     Defendant Taro Pharmaceuticals USA, Inc. ("Taro USA") is a New York corporation with its principal place of business in Hawthorne, New York. Taro USA is a wholly-owned subsidiary of Defendant Taro Israel.  During the Class Period, Taro USA sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

25.     Defendant Taro Pharmaceutical Industries, Ltd. ("Taro Israel") has its principal place of business in Haifa, Israel. Voting power in Taro Israel is 79.3% controlled by Sun Pharmaceutical Company, Ltd. ("Sun") (an Indian company that also owns other generic drug manufacturers, including Sun Pharmaceutical Industries, Inc. ("SPII"), a United States-based subsidiary) or Dilip Shanghvi (the founder of Sun and Chairman of Taro) and members of his immediate family. During the Class Period, Taro Israel, through its subsidiary Taro USA, sold

generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

26.     In this complaint, Taro USA and Taro Israel will be referred to collectively as "Taro."

27.     Defendant Wockhardt Ltd., an international pharmaceutical and biotechnology company headquartered in Mumbai, India, manufactures, markets and sells generic drugs, including clobetasol, throughout the United States. Wockhardt maintains manufacturing plants and substantial operations in the United States, including its wholly owned subsidiary Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), through which it sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States during the Class Period.

28.     Defendant Morton Grove Pharmaceuticals Inc. is a Delaware corporation headquartered in Morton Grove, Illinois. Morton Grove is a wholly-owned subsidiary of Wockhardt. During the Class Period, Morton Grove sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States.

29.     In this complaint, Wockhardt and Morton Grove will be referred to collectively as "Wockhardt."

30.     Defendant Actavis Holdco U.S., Inc. ("Actavis") is a Delaware corporation that has its administrative headquarters in Parsippany-Troy Hills, New Jersey. In 2012, Watson Pharmaceuticals acquired then-Switzerland-based Actavis Group to form Actavis plc, later known as Allergan plc after Actavis plc acquired Allergan Inc. in 2015. In August 2016, Teva Pharmaceutical Industries Ltd. acquired Allergan plc's generic pharmaceutical business for $40.5 billion. Actavis Holdco U.S., Inc. was among Allergan plc's generic pharmaceutical entities

8

acquired by Teva. During the Class Period, Actavis sold generic clobetasol and/or desonide products to customers in this District and other locations in the United States. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

31.     All acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendants' business affairs.

## CO-CONSPIRATORS

32.     Various other persons, firms, corporations and entities have participated as unnamed co-conspirators with Defendants in the violations and conspiracy alleged herein.  In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

33.     At all relevant times, each Defendant was an agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of this action.

## INTERSTATE TRADE AND COMMERCE

34.     The business activities of Defendants that are the subject of this action were within the flow of, and substantially affected, interstate trade and commerce.

9

35.     During the Class Period, Defendants sold substantial quantities of generic clobetasol and desonide products in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

## FACTUAL ALLEGATIONS

### The Industry

36.     According to the FDA's Glossary, a generic drug is "the same as a brand name drug in dosage, safety, strength, how it is taken, quality, performance, and intended use." Once the FDA approves a generic drug as "therapeutically equivalent" to a brand drug, the generic version "can be expected to have equal effect and no difference when substituted for the brand name product."

37.     The entire purpose of permitting a generic drug industry in the United States was to encourage the manufacture of less expensive, non-branded substitutes for branded prescription drugs that either had no patent exclusivity or for which the patent exclusivity was expiring. Once the patent on a brand-name drug expires, generic manufacturers can move in, creating more competition and lower prices. In a January 2012 report, the GAO noted that "[o]n average, the retail price of a generic drug is 75 percent lower than the retail price of a brand-name drug."

38.     Due to the price differentials between branded and generic drugs, as well as other institutional features of the pharmaceutical industry, pharmacists liberally and substantially substitute the generic drug when presented with a prescription for the branded drug. Since passage of the Hatch-Waxman Act (Pub. L. No. 98-417, 98 Stat. 1585 (codified at 15 U.S.C. §§ 68b-68c, 70b; 21 U.S.C. §§ 301 note, 355, 360cc; 28 U.S.C. § 2201; 35 U.S.C. §§ 156, 271, 282)), every state has adopted substitution laws requiring or permitting pharmacies to substitute generic

drug equivalents for branded drug prescriptions (unless the prescribing physician specifically orders otherwise by writing "dispense as written" or similar language on the prescription).

39.     According to a report by the Generic Pharmaceutical Association ("GPhA"), nearly 3.8 billion (88%) of the total 4.3 billion prescriptions dispensed in the U.S. in 2014 were filled using generic drugs.

40.     There has been substantial consolidation in the generic drug industry recently. The result of the generic drug industry's consolidation has been higher prices for consumers. Generic manufacturers merged as a partial reaction to the consolidation of the distributors, the logic being that generic manufacturers could exert leverage to charge higher prices if distributors were stripped of the option of negotiating lower prices with other generic manufacturers offering therapeutically equivalent drugs. Market consolidation has also resulted in more generic product lines being combined or discontinued, further reducing price competition.

### Market for Generic Clobetasol

41.     Clobetasol is one of the most widely used dermatological drugs. It is a high strength topical corticosteroid used to treat a wide variety of skin conditions, including eczema, psoriasis, sebderm, dermatitis, and vitiligo. It is also highly effective for contact dermatitis caused by exposure to poison ivy/oak. Clobetasol belongs to Class I of the corticosteroids, making it one of the most potent available. While it is intended to be used temporarily due to its potency it can be used for longer periods of time in certain cases.

42.     The following Defendants manufacture and sell, *inter alia*, the following generic versions of clobetasol at issue in this case, with the topical ointment being the most commonly used version:

11

| Manufacturer | Topical Ointment | Topical Solution | Topical Gel | Topical Cream | Topical Cream (Emollient) / Embeline E |
|---|---|---|---|---|---|
| Fougera | X | X | X | X | X |
| Hi-Tech | X | X | X | X | X |
| Perrigo | | | X | | |
| Taro | X | X | X | X | X |
| Wockhardt | | X | | | |

43.     Defendants collectively sell hundreds of millions of dollars-worth of generic clobetasol every year in the United States.

44.     In the last few years, mergers and withdrawals from the market caused the number of competitors to shrink drastically.   In 2009, there were approximately ten manufacturers of generic clobetasol topical ointment, topical solution, topical gel, and topical cream.

//

//

//

//

//

//

//

45.     Since June of 2014, three manufacturers have dominated the market for generic clobetasol:



**Defendants' Pricing Conduct for Generic Clobetasol**

46.     Generic clobetasol pricing was remarkably stable until 2014.

47.     On June 3 and June 4, 2014, Defendants Hi-Tech, Perrigo, Sandoz, Taro USA, and Wockhardt each attended a Generic Pharmaceutical Association ("GPhA") CMC Workshop in North Bethesda, Maryland. The GPhA describes itself as "the nation's leading trade association for manufacturers and distributors of generic prescription drugs, manufacturers of bulk active pharmaceutical chemicals, and suppliers of other goods and services to the generic industry." The meeting provided Defendants with opportunities to collude.

48.     Soon after this meeting, pricing for generic clobetasol manufactured and sold by each Defendant suddenly increased by over 1000%.

49.     The National Average Drug Acquisition Cost ("NADAC") data for generic clobetasol manufactured reveals a pattern of dramatic price increases on or around June 2014

followed by smaller increases through 2015.[3]

50.     For example, the chart below reveals identically-timed dramatic price increases for 15 mg clobetasol cream manufactured and sold by Defendants Taro, Fougera, and Hi-Tech on or around June 2014 followed by smaller increases through 2015:



51.     Although Actavis did not enter the clobetasol market until recently, it appears to have joined the conspiracy and implemented similar lock-step price increases.

52.     The NADAC data for generic 15 mg clobetasol ointment manufactured by Defendants Taro, Fougera, and Hi-Tech reveals a similar pattern:

---

[3] NADAC is a measure of the cost of drugs developed by the National Association of State Medicaid Directors to set a single national pricing benchmark based on average drug acquisition costs.



//

//

//

//

//

//

//

//

//

//

//

//

53.     The NADAC data for generic 15 mg clobetasol gel manufactured by Defendants Taro, Fougera, Hi-Tech and Perrigo also reveals a similar pattern:



//

//

//

//

//

//

//

//

//

//

54.    The NADAC data for generic 50 ml clobetasol topical solution manufactured by Defendants Taro, Fougera, Hi-Tech and Wockhardt reveals a similar pattern as well:



55.    In most cases, the initial 2014 price increases were over 1000%.  Although there was some decline in prices following the initial June 2014 increases, prices did not decline to the levels that existed prior to the June 2014 increases.  As of August of 2016, the price of clobetasol remains approximately 800% higher than early 2014 levels.

56.    In some places, the cost of a 45 gram tube of clobetasol was reported as increasing from $25 to $327.

## Market for Generic Desonide

57.    Desonide is a low-potency topical corticosteroid used primarily used to treat eczema, seborrheic dermatitis, contact dermatitis and psoriasis.  It is a group VI corticosteroid, the second least potent group.

58.     The generic desonide market—like the market for clobetasol—is now highly concentrated.  Since 2013 to the present, the market has been dominated by Defendants Fougera, Perrigo, Actavis, and Taro.

59.     The following Defendants manufacture and sell, *inter alia*, the following generic versions of desonide at issue in this case:

| Manufacturer | Ointment | Cream |
|---|---|---|
| Actavis | | X |
| Fougera | X | |
| Perrigo | X | X |
| Taro | X | X |

60.     Defendants collectively sell hundreds of millions of dollars-worth of generic desonide every year in the United States.

**Defendants' Pricing Conduct for Generic Desonide**

61.     Generic desonide pricing was remarkably stable until 2013.

62.     Defendants Actavis, Perrigo, Sandoz, and Taro attended the GPhA's Annual Meeting in Orlando, Florida on February 20-22, 2013 and the GPhA's CMC Workshop in North Bethesda, Maryland on June 4 and 5, 2013.   These meeting provided Defendants with opportunities to collude.[4]

63.     Soon after this meeting, pricing for generic desonide manufactured and sold by each Defendant suddenly increased by approximately 500%.

---

[4] As noted above, Defendants Perrigo and Sandoz sit on the GPhA's board of directors.

64.     The NADAC data for generic desonide manufactured reveals a pattern of identically-timed dramatic price increases on or around June 2013 followed by smaller increases through 2015.[5]

65.     For example, the chart below reveals identically-timed dramatic price increases for 15 g desonide cream manufactured and sold by Defendants Taro, Perrigo, and Actavis on or around June 2013 followed by smaller increases through 2015:



_____

[5] NADAC is a measure of the cost of drugs developed by the National Association of State Medicaid Directors to set a single national pricing benchmark based on average drug acquisition costs.

66.    The NADAC data for 15 g desonide ointment manufactured and sold by Defendants Taro, Fougera, and Perrigo reveals a similar pattern:



67.    The initial 2013 price increases in June 2013 were over 500%.  Although there was some decline in prices following the initial June 2013 increases, prices did not decline to the levels that existed prior to the September 2014 increases.  As of August of 2016, the price of desonide remains over 450% higher than early 2013 levels.

68.    Whereas, at the beginning of 2013, a 60-gram tube of generic desonide cream cost $26.75, as of December 12, 2013, the cost was nearly $250.

### The Effects of Defendants' Pricing Conduct

69.    Defendants' sudden and massive price increases represented a sharp departure from the previous years of low and stable prices.  This in itself is indicative of collusion.

70.     There were no reasonable justifications for this abrupt shift in pricing conduct. Federal law requires drug manufacturers to report potential drug shortages to the FDA, the reasons therefor, and the expected duration of the shortage. No supply disruption was reported by the relevant Defendants with respect to clobetasol or desonide.

71.     And because generic pharmaceutical manufacturers do not need to incur the large research and development costs that brand manufacturers absorb in developing new drugs, the price increases cannot be attributed to the need to fund research and development.

72.     Industry analysts have questioned manufacturers' claims that price increases are due to supply disruptions.  Indeed, Richard Evans at Sector & Sovereign Research recently wrote:   "[a] plausible explanation [for price increases of generic drugs] is that generic manufacturers, having fallen to near historic low levels of financial performance are cooperating to raise the prices of products whose characteristics – low sales due to either very low prices or very low volumes – accommodate price inflation."

73.     This abrupt shift in the pricing of generic clobetasol and desonide has had a catastrophic effect on consumers.  As noted in letters sent to generic drug manufacturers as part of a Congressional investigation into unexplained price increases:

> This dramatic increase in generic drug prices results in decreased access for patients. According to the National Community Pharmacists Association (NCPA), a 2013 member survey found that pharmacists across the country "have seen huge upswings in generic drug prices that are hurting patients and pharmacies ability to operate" and "77% of pharmacists reported 26 or more instances over the past six months of a large upswing in a generic drug's acquisition price." These price increases have a direct impact on patients' ability to purchase their needed medications. The NCPA survey found that "pharmacists reported patients declining their medication due to increased co-pays," and "84% of pharmacists said that the acquisition price/lagging reimbursement trend is having a 'very significant' impact on their ability to remain in business to continue serving patients." (Footnotes omitted).

74.     Norman Levine, a dermatologist in Tucson, Arizona, illustrated the hardship caused by clobetasol price increases in an article for *Dermatology Times*:

> A patient with a minimally steroid-responsive dermatosis, vitiligo, recently contacted me to complain that he could no longer afford the medication that I had prescribed for him.  I was puzzled when he informed me that a 60-gram tube of clobetasol cream would now cost him $220, an amount that was far beyond his budget … This new economic reality strikes at the heart of the service we dermatologists provide for our patients.  If we can no longer use medications that work best, we may revert to second-rate status medically and only marginally improve the lives of the people we treat.

75.     Alan Rockoff, a dermatologist in Brookline, Massachusetts similarly illustrated the hardship caused by desonide price increases in an article for *Dermatology News*:

> And desonide – generic desonide – would cost $111.70. For a 15-g tube. $111.70 for 15 g of a generic … Because I have no way of knowing any more [sic] which of the plain-vanilla generic drugs I've prescribed forever are going to be fine, and which are going to cost my patients an arm and a leg and encourage them to call back and yell at me – or else not bother to pick up the medication at all – I don't even know half the time what to recommend anymore. I certainly don't have the time to go shopping for every prescription I order. There are just too many drugs, too many prescriptions, too many patients, too many pharmacies, too many insurance contracts, each with its own formulary quirks cream that's been on the market forever! Does that make any sense?  If anyone out there has any explanations or suggestions, I'm all ears. In the meantime, I may try to simplify my life by sending all my patients to the local Russian deli and prescribing topical caviar. It's likely to be cheaper than desonide.

76.     A meeting of the minds among the competing sellers of generic clobetasol and desonide assured them increased profits.

77.     These price increases are reflected in Defendants' financial results.

78.     For example, Taro's gross profits increased over $100 million between its fiscal year ending in March 2015 and its fiscal year ending in March 2016. In an earnings call just a few months after it implemented a drastic price increase on clobetasol in June 2014, Taro reported that it was "realizing the benefits of the previous quarter's price adjustments in the current quarter."

22

79.     In 2013, prior to its acquisition of Hi-Tech, Akorn's net revenue from prescription pharmaceuticals was only approximately $280 million. After the 2014 acquisition of Hi-Tech and the clobetasol price hikes that year, Akorn's revenues from prescription pharmaceuticals grew to approximately $504 million, a nearly 91% increase.   Gross profits from pharmaceuticals increased from $151 million in 2013 to $270 million in 2014. The acquisition of Hi-Tech accounted for $177 million in revenue from two full quarters that year. By 2015, clobetasol propionate was among Akorn's top 10 generic products in terms of net revenue. That year, Akorn's net revenues from prescription pharmaceuticals soared to $924 million, a nearly 94% increase from 2014 (compared to only a 6% increase for its consumer health division). $324.5 million of that revenue was attributable to Hi-Tech. Akorn's gross profits for prescription pharmaceuticals increased another 61% to $566 million. The company attributed gains in its gross profit margin from 47.1% to 60.5% to "the effect of price changes."

80.     Net sales for Perrigo's prescription drug segment increased 31% from its fiscal year 2013 to fiscal year 2014 (when Defendants hiked the price of desonide), reaching $927 million in net sales. In fiscal year 2015, Perrigo's net sales from prescription drugs grew by another $74 million to $1 billion.  Gross profit grew by $59 million from 2014 to 2015, primarily due in part to "pricing initiatives" taken in the first quarter of fiscal year 2015 (July-September 2014)—the same period in which it implemented price increases for clobetasol gel.

81.     In 2012, Actavis's pharma segment (generics and over the counter drugs) reported approximately $4.4 billion in product sales. In 2013 and 2014, Actavis identified desonide as one of 25 key products in its portfolio of some 250 generic drugs; it identified its launch of desonide lotion and cream products as among its key U.S. generic launches in 2013.  In 2013 and 2014,

after the desonide price hikes, Actavis's product sales from its pharma segment grew from $4.4 billion in 2012, to approximately $6.3 billion and $6.6 billion, respectively.

**Congressional and Regulators' Responses to Rising Generic Drug Prices**

82.     As noted above, drug manufacturers' dramatic and unexplained price hikes have engendered extensive scrutiny by the United States Congress and by federal and state antitrust regulators.

83.     In a January 8, 2014 letter to members of key committees of the United States House of Representatives and Senate, Douglas P. Hoey, Chief Executive Officer of the National Community Pharmacists' Association, asked Congress to conduct an investigation of generic drug price increases.

84.     On October 2, 2014, Representative Elijah E. Cummings ("Cummings"), Ranking Member of the House Committee on Oversight and Government Reform, and Senator Bernie Sanders ("Sanders"), Chairman of the Subcommittee on Primary Health and Aging of the Senate Committee on Health, Education, Labor and Pensions, sent letters to drug manufacturers Actavis, Endo, Lannett, Par, Sun, Impax, Mylan, and West-Ward ("October Letters") asking for detailed information on the generic price hikes.

85.     On November 20, 2014, Sanders's committee held a hearing entitled "Why Are Some Generic Drugs Skyrocketing In Price?" ("Senate Hearing").  Various witnesses discussed the price hikes for generic drugs.

86.     Sanders and Cummings followed up on the Senate Hearing by writing a letter on February 24, 2015 to the Office of the Inspector General ("OIG") of the Department of Health & Human Services, asking it to investigate the effect price increases of generic drugs, have had on generic drug spending within the Medicare and Medicaid programs. The OIG responded in a

letter dated April 13, 2015, saying it planned to engage in a review of quarterly average manufacturer prices for the 200 top generic drugs from 2005 through 2014.

87.     In the meantime, the Antitrust Division of the United States Department of Justice ("DOJ") commenced a wide-ranging criminal investigation of generic drug pricing and has caused grand jury subpoenas to be issued to various generic drug manufacturers in connection with this investigation.   According to a June 26, 2015 report by the service Policy and Regulatory Report ("PaRR Report") :

> A PaRR source says prosecutors see the case much like its antitrust probe of the auto parts industry, which has gone on for years and morphed into the department's largest criminal antitrust probe ever. Like in that case, prosecutors expect "to move from one drug to another in a similar cascading fashion."

88.     On August 6, 2015, Allergan plc (which previously owned Actavis's generic operations prior to the Teva acquisition) filed an SEC Form 10-Q, in which it disclosed that "[o]n June 25, 2015, [Actavis] received a subpoena from DOJ's Antitrust Division seeking information relating to the marketing and pricing of certain of the Company's generic products and communications with competitors about such products."

89.     On May 28, 2016, Taro's parent company, Sun stated in a filing with the National Stock Exchange of India that "…one of the Company's U.S. subsidiaries, [(SPII)] has received a grand jury subpoena from the United States Department of Justice, Antitrust Division seeking documents from SPII and its affiliates relating to corporate and employee records, generic pharmaceutical products and pricing, communications with competitors and others regarding the sale of generic pharmaceutical products, and certain other related matters. SPII is currently responding to the subpoena." As noted above, Sun holds a controlling stake in Taro. "[S]oon after taking Taro in hand Sun had ferreted out a way to squeeze out more profit: steady price

increases on Taro's portfolio of medicines, Since taking control those price hikes have amounted to a 300 percent increase across Taro's portfolio, according to data provider IMS Health. The move lit a fire under Taro's profit margin, which reached nearly 60 percent last year, according to Bloomberg data."

90.     It has been noted that Sun is one of a group of global generic drug manufacturers based in Mumbai, India that sell "super-inflated generics." Another is Dr. Reddy's Laboratories, Inc., which is being investigated by the Attorneys General for the states of California and Texas in connection with the pricing of its generic drugs sold in the United States.

91.     On September 9, 2016, Taro Israel disclosed in an SEC filing that the DOJ issued subpoenas to Taro USA and two of its senior officers relating to its ongoing investigation of anticompetitive practices in the generic pharmaceutical industry.

92.     The fact that these companies and/or their employees received subpoenas from a federal grand jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's *Antitrust Division Manual.* Section F.1 of that chapter notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." *Id.* at III-82. The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division." *Id*. "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id*. at III-83. "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were

made or where conspiratorial communications occurred." *Id*. Thus, the fact that Taro and its employees their employees received federal grand jury subpoenas is a strong indicator that antitrust offenses have occurred.

93.   Commentators have also taken note of the criminal subpoenas being issued. As noted on one legal website:

> The Justice Department's subpoenas focus on sharing and exchanging of pricing information and other issues among generic drug companies. The initial subpoenas, including two senior executives, suggest that the Justice Department has specific information relating to their participation in potentially criminal conduct. It is rare for the Justice Department to open a criminal investigation with specific subpoenas for individuals, along with company-focused subpoenas.

> Given the breadth of such a potential cartel investigation, the Justice Department's inquiry of the generic pharmaceutical industry could be significant. The prices for a large number of generic drug prices have increased significantly over the last year. There does not appear to be any rational explanation for such increases involving a diverse set of products.

> The scope of these price increases and the timing of them certainly raise serious concerns about collusive activity among competitors.

94.   As Mark Rosman, former assistant chief of the National Criminal Enforcement Section of DOJ's Antitrust Division, noted in an article on the "unusual" nature of the criminal subpoenas, "[a] DOJ investigation into the alleged exchange of pricing information in the pharmaceutical industry likely indicates that the agency anticipates uncovering criminal antitrust conduct in the form of price-fixing or customer allocation."

**Factors Increasing the Clobetasol and Desonide Markets' Susceptibility to Collusion**

95.   Publicly available data on the generic clobetasol and desonide markets in the United States demonstrates that it is susceptible to cartelization by the Defendants.  Factors that make a market susceptible to collusion include: (1) a high degree of industry concentration; (2) significant barriers to entry; (3) inelastic demand; (4) the lack of available substitutes for the

goods involved; (5) a standardized product with a high degree of interchangeability between the goods of cartel participants; (6) absence of a competitive fringe of sellers; and (7) intercompetitor contacts and communication.

96.     *Industry Concentration*. A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among co-conspirators.

97.     In the United States generic clobetasol market, the number of competitors has dwindled, creating cartel conditions. While there were approximately ten manufacturers in the market in 2009, by 2014, there were currently only five manufacturers remaining in the market. At the time it announced its price increases for clobetasol and desonide products, Taro USA controlled approximately 50% of the market.

98.     Similarly, in the generic desonide market, the number of competitors has dwindled, leaving only four manufacturers in the market.

99.     The markets for generic clobetasol and desonide are mature and the Defendants in those markets can only gain market share by competing on price.

100.     The firms that currently control the markets are the Defendants.

101.     *Barriers to Entry*. Supracompetitive pricing in a market normally attracts additional competitors who want to avail themselves of the high levels of profitability that are available.  However, the presence of significant barriers to entry makes this more difficult and helps to facilitate the operation of a cartel.

102.     Here, there are significant capital, regulatory and intellectual property barriers to entry in the market for generic clobetasol and desonide.

103.     Costs of manufacture, coupled with regulatory oversight, represent a substantial barrier to entry the generic clobetasol and desonide markets.

104.    Entry into the market has occurred on a limited basis, as reflected, *inter alia*, by the actions of Actavis/Allergan in the clobetasol market. But that entry has not curbed the price-fixing in the industry.

105.    ***Demand Inelasticity***. Price elasticity of demand is defined as the measure of responsiveness in the quantity demanded for a product as a result of change in price of the same product.  It is a measure of how demand for a product reacts to a change in price.  The basic necessities of life—food, water, and shelter—are examples of goods that experience nearly perfectly inelastic demand at or near the minimums necessary to sustain life.  In other words, a person on the verge of dying of thirst will pay almost anything for drinking water.  In order for a cartel to profit from raising prices above competitive levels, demand for the product must be sufficiently inelastic such that any loss in sales will be more than offset by increases in revenue on those sales that are made.  Otherwise, increased prices would result in declining revenues and profits.

106.    Generic clobetasol and desonide products are critical to the health of patients; they are considered medical necessities that must be purchased at whatever cost the Defendants offer them for sale. Thus, generic clobetasol and desonide products are excellent candidates for cartelization because price increases will result in more revenue, rather than less.

107.    ***Lack of Substitutes***. Although there are other types of drugs to treat skin conditions, they are of different potencies and have varying side effects making them unsuitable alternatives to either clobetasol or desonide.

108.    ***Standardized Product with High Degree of Interchangeability***. A commodity-like product is one that is standardized across suppliers and allows for a high degree of substitutability among different suppliers in the market.  When products offered by different

suppliers are viewed as interchangeable by purchasers, it is easier for the suppliers to agree on prices for the good in question and it is easier to monitor these prices effectively. Here, the generic clobetasol and desonide made by the Defendant manufacturers are each chemical compounds composed of the same raw materials.

109. *Absence of a Competitive Fringe of Sellers*. Companies that are not part of the conspiracy can erode at conspirators' market shares by offering products at a lower, more competitive price. This reduces revenue and makes sustaining a conspiracy more difficult. In the markets for generic clobetasol and desonide, there is no realistic threat that a fringe of competitive sellers will take market share from Defendants. The Defendants in the markets for generic clobetasol and desonide have oligopolistic power over those markets, which facilitates their ability to raise prices without losing market share to non-conspirators.

110. *Intercompetitor Contacts and Communications*. In order to be successful, collusive agreements require a level of trust among the conspirators. Collaboration fostered through industry associations facilitate relationships between individuals who would otherwise be predisposed to compete vigorously with each other. Here, the Defendants are members of or participants in the GPhA, which describes itself on its website as "the nation's leading trade association for manufacturers and distributors of generic prescription drugs, manufacturers of bulk active pharmaceutical chemicals, and suppliers of other goods and services to the generic industry." Thus, representatives of the Defendants have opportunities to meet and conspire at functions of this group, as well as at industry healthcare meetings, including GPhA meetings immediately prior to the announcement of the clobetasol and desonide price increases.

111. The grand jury subpoenas discussed above lend further support to the conclusion that intercompetitor communications occurred with respect to the pricing of generic clobetasol.

Indeed, according to the previously-identified PaRR Report, "prosecutors are taking a close look at trade associations as part of their investigation as having been one potential avenue for facilitating the collusion between salespeople at different generic producers."

## DEFENDANTS' ANTITRUST VIOLATIONS

112.    During the Class Period, the Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize the prices of generic drugs in the United States.

113.    In formulating and effectuating the contract, combination or conspiracy, the Defendants identified above and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the price of generic clobetasol and/or desonide products sold in the United States.  These activities included the following:

        a.    Defendants participated in meetings and/or conversations to discuss the price of generic clobetasol and/or desonide products in the United States;

        b.    Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to increase and/or maintain prices of generic clobetasol and/or desonide products sold in the United States;

        c.    Defendants agreed during those meetings and conversations to fix the price of generic clobetasol and/or desonide products; and

        d.    Defendants issued price announcements and price quotations in accordance with their agreements.

Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in the Complaint.

114.    During and throughout the period of the conspiracy alleged in this Complaint, Plaintiff and members of the Class purchased generic clobetasol and/or desonide products from Defendants (or their subsidiaries or controlled affiliates) or their co-conspirators at inflated and supracompetitive prices.

115.    Defendants' contract, combination or conspiracy constitutes an unreasonable restraint of interstate trade and commerce in violation of Sections 1 of the Sherman Act (15 U.S.C. § 1) and the laws of various states.

116.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the class have been injured in their business and property in that they have paid more for generic clobetasol and/or desonide products than they would have paid in a competitive market.

117.    The unlawful contract, combination or conspiracy has had the following effects, among others:

a.    price competition in the markets for generic clobetasol and/or desonide products has been artificially restrained;

b.    prices for generic clobetasol and/or desonide products sold by the Defendants have been raised, fixed, maintained, or stabilized at artificially high and non-competitive levels; and

c.    purchasers of generic clobetasol and/or desonide products from the Defendants have been deprived of the benefit of free and open competition in the markets for generic clobetasol and/or desonide products.

## CLASS ACTION ALLEGATIONS

118. Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities in the United States and its territories who purchased, paid and/or provided reimbursement for some or all of the purchase price for Defendants' generic clobetasol products from June 3, 2014 through the present and/or Defendants' generic desonide from June 4, 2013 through the present.  This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' generic clobetasol and/or desonide products for purposes of resale or directly from Defendants;  (d) fully insured health plans (*i.e.*, health plans that purchased insurance covering 100% of their reimbursement obligation to members); (e) any "flat co-pay" consumers whose purchases of Defendants' generic clobetasol and/or desonide products were paid in part by a third party payor and whose co-payment was the same regardless of the retail purchase price; and (f) any judges or justices involved in this action and any members of their immediate families.

119. Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the states listed below (the "Indirect Purchaser States")[6] on behalf of the following class (the "Damages Class"):

> All persons and entities in the Indirect Purchaser States who purchased, paid and/or provided reimbursement for some or all of

---

[6] The "Indirect Purchaser States" consist of Alabama, Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.

the purchase price for Defendants' generic clobetasol products from June 3, 2014 through the present and/or Defendants' generic desonide from June 4, 2013 through the present.  This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' generic clobetasol and/or desonide products for purposes of resale or directly from Defendants;  (d) fully insured health plans (i.e., health plans that purchased insurance covering 100% of their reimbursement obligation to members); (e) any "flat co-pay" consumers whose purchases of Defendants' generic clobetasol and/or desonide products were paid in part by a third party payor and whose co-payment was the same regardless of the retail purchase price; and (f) any judges or justices involved in this action and any members of their immediate families.
.

120. The Nationwide Class and the Damages Class are referred to herein as the "Classes."

121. While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are millions of members in each Class.

122. Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

   a.   Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of generic clobetasol and/or desonide products;

   b.   The identity of the participants of the alleged conspiracy;

   c.   The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

   d.   Whether the alleged conspiracy violated the Sherman Act, as alleged in

the First Count;

e.     Whether the alleged conspiracy violated state antitrust and unfair competition laws, and/or state consumer protection laws, as alleged in the Second and Third Counts;

f.     Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Count;

g.     Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

h.     The effect of the alleged conspiracy on the prices of generic clobetasol and/or desonide products sold in the United States during the Class Period;

i.     The appropriate injunctive and related equitable relief for the Nationwide Class; and

j.     The appropriate class-wide measure of damages for the Damages Class.

123.  Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for generic clobetasol and/or desonide products purchased indirectly from the Defendants and/or their co-conspirators.

124.  Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

125. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

126.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

127.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## FIRST COUNT
### Violation of Section 1 and 3 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

128.  Plaintiff repeats the allegations set forth above as if fully set forth herein.

129.  Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. §§  1, 3).

130.  The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

36

131. During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to establish a price floor and artificially fix, raise, stabilize, and control prices for generic clobetasol and/or desonide products, thereby creating anticompetitive effects.

132. The conspiratorial acts and combinations have caused unreasonable restraints in the markets for generic clobetasol and/or desonide products.

133. As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased generic clobetasol and/or desonide products have been harmed by being forced to pay inflated, supracompetitive prices for generic clobetasol and/or desonide products.

134. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

135. Defendants' conspiracy had the following effects, among others:

(a) Price competition in the markets for generic clobetasol and/or desonide products has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for generic clobetasol and/or desonide products provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiff and members of the Nationwide Class who purchased generic clobetasol and/or desonide products indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

136. Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for generic clobetasol and/or desonide products purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

137. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

138. Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND COUNT**
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiff and the Damages Class)**

139. Plaintiff repeats the allegations set forth above as if fully set forth herein.

140. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of generic clobetasol and/or desonide products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

141. The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for generic clobetasol and/or desonide products.

142. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: (a) participating in meetings and conversations among themselves in the United States during which they agreed to price generic clobetasol and/or desonide products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to generic clobetasol and/or desonide products

provided in the United States; and (b) participating in meetings and trade association conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

143. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of generic clobetasol and/or desonide products.

144. Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

145. Defendants have entered into an unlawful agreement in restraint of trade in violation of Alabama Code § 6-6-60, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for generic clobetasol and/or desonide products was restrained, suppressed, and eliminated throughout Arizona; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Alabama Code § 6-6-60, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Alabama Code § 6-6-60, *et seq*.

146. Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes, §§ 44-1401, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) price competition for generic clobetasol and/or desonide products was restrained, suppressed, and eliminated throughout Arizona; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

147. Defendants have entered into an unlawful agreement in restraint of trade in violation of California Business and Professions Code §§ 16700 *et seq*. During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of California Business and Professions Code Section §16720.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of generic clobetasol and/or desonide products at supracompetitive levels. The aforesaid violations of Section 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among the

Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of generic clobetasol and/or desonide products. For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and creating a price floor, fixing, raising, and stabilizing the price of generic clobetasol and/or desonide products. The combination and conspiracy alleged herein has had, *inter alia*, the following effects:  (1) price competition for generic clobetasol and/or desonide products has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for generic clobetasol and/or desonide products  provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased generic clobetasol and/or desonide products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for generic clobetasol and/or desonide products than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

148. Defendants have entered into an unlawful agreement in restraint of trade in violation of District of Columbia Code Annotated §§ 28-4501, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide

products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic clobetasol and/or desonide products that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic clobetasol and/or desonide products in the District of Columbia that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*   Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

149. Defendants have entered into an unlawful agreement in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq*. Defendants' unlawful conduct had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at

42

artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.

150. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*) Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Illinois; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

151. Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Iowa; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553, *et seq.*

152. Defendants have entered into an unlawful agreement in restraint of trade in violation of Kansas Statutes Annotated, §§ 50-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Kansas; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Kansas

commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

153. Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes (Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*) Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Maine; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

154. Defendants have entered into an unlawful agreement in restraint of trade in violation of Michigan Compiled Laws Annotated §§ 445.771, *et seq.* Defendants'

combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Michigan; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

155. Defendants have entered into an unlawful agreement in restraint of trade in violation of Minnesota Annotated Statutes §§ 325D.49, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

156. Defendants have entered into an unlawful agreement in restraint of trade in violation of Mississippi Code Annotated §§ 75-21-1, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq*.

157. Defendants have entered into an unlawful agreement in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price

competition was restrained, suppressed, and eliminated throughout Nebraska; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

158. Defendants have entered into an unlawful agreement in restraint of trade in violation of Nevada Revised Statutes Annotated §§ 598A.010, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Nevada; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property

and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

159. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and desonide products. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

160. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) generic

clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

161. Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws §§ 340, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout New York; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products that were higher than they would have been absent the Defendants' illegal acts. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are

threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

162. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

163. Defendants have entered into an unlawful agreement in restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price

competition was restrained, suppressed, and eliminated throughout North Dakota; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

164. Defendants have entered into an unlawful agreement in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Oregon; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are

threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

165. Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

166. Defendants have entered into an unlawful agreement in restraint of trade in violation of Tennessee Code Annotated §§ 47-25-101, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) generic

clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

167. Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Utah; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into

54

agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

168.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

169.   Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high

levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products.  During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

170. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*.

Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

171.  Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiff and members of the Damages Class have paid more for generic clobetasol and/or desonide products than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

172.  In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiff and members of the Damages Class.

173.  Accordingly, Plaintiff and members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD COUNT
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

174.  Plaintiff repeats the allegations set forth above as if fully set forth herein.

175.  Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

176.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic clobetasol and/or desonide products were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10). Defendants' unlawful conduct had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

177.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code

58

§ 17200, *et seq.*   During the Class Period, Defendants manufactured, marketed, sold, or distributed generic clobetasol and/or desonide products in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law. The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code §17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.* of the California Business and Professions Code, set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of  generic clobetasol and/or desonide products in the State of California within the meaning of Section 17200, California Business and Professions Code; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code. Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and members of the Damages Class to pay supracompetitive and artificially-inflated prices for generic clobetasol and/or desonide products.  Plaintiff and members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, §§17203 and 17204.

178.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed or obtained in the District of Columbia. The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.   Plaintiff and members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with

respect to the price charged by Defendants for generic clobetasol and/or desonide products. Defendants had the sole power to set that price and Plaintiff and members of the Damages Class had no power to negotiate a lower price. Moreover, Plaintiff and members of the Damages Class lacked any meaningful choice in purchasing generic clobetasol and/or desonide products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff and members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of generic clobetasol and/or desonide products, including their illegal conspiracy to secretly fix the price of generic clobetasol and/or desonide products at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff and members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for purchasers so that there was a gross disparity between the price paid and the value received for generic clobetasol and/or desonide products. Defendants' unlawful conduct had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. As a direct and proximate result of the Defendants' conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair

competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

179.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. Defendants' unlawful conduct had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Florida; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

180.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*. Defendants' unlawful conduct had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

181. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1, *et seq.* Defendants were engaged in trade or commerce as defined by G.L. 93A. Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic clobetasol and/or desonide products were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11. Defendants' unlawful conduct had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and

the members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A, §§ 2, 11, that were knowing or willful, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute, including multiple damages.

182.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.* Plaintiff and members of the Damages Class purchased generic clobetasol and/or desonide products for personal or family purposes. Defendants engaged in the conduct described herein in connection with the sale of generic clobetasol and/or desonide products in trade or commerce in a market that includes Missouri. Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class. Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic clobetasol and/or desonide products. The concealed, suppressed, and omitted facts would have been important to Plaintiff and

members of the Damages Class as they related to the cost of generic clobetasol and/or desonide products they purchased. Defendants misrepresented the real cause of price increases and/or the absence of price reductions in generic clobetasol and/or desonide products by making public statements that were not in accord with the facts.   Defendants' statements and conduct concerning the price of generic clobetasol and/or desonide products were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing generic clobetasol and/or desonide products at prices established by a free and fair market. Defendants' unlawful conduct had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Missouri; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products.   The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.  As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15

CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

183.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.* Defendants' unlawful conduct had the following effects:  (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Montana; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants marketed, sold, or distributed generic clobetasol and/or desonide products in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

184.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic clobetasol and/or desonide products were sold, distributed or obtained in New Mexico and took

efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiff and members of the Damages Class and the prices paid by them for generic clobetasol and/or desonide products as set forth in N.M.S.A., § 57-12-2E.   Plaintiff and members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.   There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for generic clobetasol and/or desonide products.   Defendants had the sole power to set that price and Plaintiff and members of the Damages Class had no power to negotiate a lower price.   Moreover, Plaintiff and members of the Damages Class lacked any meaningful choice in purchasing generic clobetasol and/or desonide products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff and members of the Damages Class could avoid the overcharges.   Defendants' conduct with regard to sales of generic clobetasol and/or desonide products, including their illegal conspiracy to secretly fix the price of generic clobetasol and/or desonide products at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff and members of the Damages Class.   The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for generic clobetasol and/or desonide products. Defendants' unlawful conduct had the following effects:   (1) generic clobetasol and/or desonide products

price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

185.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.* Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. Defendants and their co-conspirators made public statements about the prices of generic clobetasol and/or desonide products that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for generic clobetasol and/or desonide products; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who

indirectly purchased generic clobetasol and/or desonide products were misled to believe that they were paying a fair price for generic clobetasol and/or desonide products or the price increases for generic clobetasol and/or desonide products were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing generic clobetasol and/or desonide products would have an impact on New York consumers and not just the Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing generic clobetasol and/or desonide products would have a broad impact, causing consumer class members who indirectly purchased generic clobetasol and/or desonide products to be injured by paying more for generic clobetasol and/or desonide products than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects:   (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout New York; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants marketed, sold, or distributed generic clobetasol and/or desonide products in New York, and Defendants' illegal conduct substantially affected New

York commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic clobetasol and/or desonide products in New York. Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

186.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*. Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff and members of the Damages Class could not possibly have been aware.  Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases.  Defendants' public statements concerning the price of generic clobetasol and/or desonide products created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad

adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants marketed, sold, or distributed generic clobetasol and/or desonide products in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic clobetasol and/or desonide products in North Carolina. Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

187. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*) Members of this Damages Class purchased generic clobetasol and/or desonide products for personal, family, or household purposes.

Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic clobetasol and/or desonide products. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' generic clobetasol and/or desonide products prices were competitive and fair. Defendants' unlawful conduct had the following effects:   (1) generic clobetasol and/or desonide products price   competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of generic clobetasol and/or desonide products, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing generic clobetasol and/or desonide

products at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of generic clobetasol and/or desonide products they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

188.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, *et seq*.) Defendants' combinations or conspiracies had the following effects: (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq*., and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

189.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.* Defendants agreed to, and

did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which generic clobetasol and/or desonide products were sold, distributed, or obtained in Vermont. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic clobetasol and/or desonide products. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' generic clobetasol and/or desonide products prices were competitive and fair. Defendants' unlawful conduct had the following effects:   (1) generic clobetasol and/or desonide products price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic clobetasol and/or desonide products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic clobetasol and/or desonide products. As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of generic clobetasol and/or desonide products, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing generic clobetasol and/or desonide products at prices set by a free and fair

market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

**FOURTH COUNT**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Damages Class)**

190.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

191.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on generic clobetasol and/or desonide products.

192.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and members of the Damages Class for generic clobetasol and/or desonide products manufactured by Defendants during the Class Period.

193.    Plaintiff and members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Damages Class may make claims on a *pro rata* basis

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment that:

75

1.      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

2.      That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a *per se* violation of Section 1 of the Sherman Act; (c) An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and (d) Acts of unjust enrichment by Defendants as set forth herein.

3.      Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a

similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiff and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

7.      Plaintiff and members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.      Plaintiff and members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.      Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.


Dated: October 27, 2016                           Respectfully submitted,


                                        By: */s/ Scott A. Martin*
                                        Scott A. Martin
                                        HAUSFELD LLP
                                        33 Whitehall Street, 14th Floor
                                        New York, NY 10004
                                        Tel:  (646) 357-1100
                                        Fax:  (212) 202-4322
                                        Email:  smartin@hausfeld.com

                                        Michael P. Lehmann
                                        Bonny E. Sweeney
                                        Christopher L. Lebsock
                                        Stephanie Y. Cho

HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:  (415) 633-1908
Fax:  (415) 358-4980
Email:  mlehmann@hausfeld.com
Email:  bsweeney@hausfeld.com
Email:  clebsock@hausfeld.com

Hilary K. Scherrer
Jeannine M. Kenney
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email:  mhausfeld@hausfeld.com
Email:  hscherrer@hausfeld.com
Email:  jkenney@hausfeld.com

*Counsel for Plaintiff*